UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

PATRICK JULIEN (A-Number: 232-597-714),

Petitioner,

v.

WARDEN OF THE CENTRAL VALLEY ANNEX DETENTION FACILITY,

Respondents.

No. 1:26-cv-08253-KES-HBK (HC)

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS AND REQUIRING IMMEDIATE RELEASE

Doc. 1

Petitioner Patrick Julien is an immigration detainee proceeding pro se with a petition for writ of habeas corpus and motion for temporary restraining order. Docs. 1, 4. Petitioner entered the United States in June 2023, at Miami Airport, and was paroled into the country as a Haitian Humanitarian Parolee. Doc. 1 at 5, 20; Doc. 8-1 at 2-3. Petitioner received employment authorization from the United States government between September 14, 2023, and June 11, 2025. Doc. 1 at 33. Petitioner's parole expired on June 11, 2025. Doc. 8-3 at 1. Petitioner was detained by immigration authorities in July 2026 at an appointment related to his pending asylum application. Doc. 1 at 6; Doc. 8-1 at 2.

An immigration judge denied petitioner's request for custody redetermination on September 9, 2026, stating that the immigration court had "[n]o [j]urisdiction." Doc. 8-4 at 1. The immigration judge's order stated:

> The current regulations governing the detention and release of respondents preclude an Immigration Judge from redetermining the custody status of arriving aliens in removal proceedings. Further,

> where DHS has determined that a respondent is an arriving alien, the Immigration Judge is precluded from undertaking a determination as to the propriety of DHS' designation.

*Id.*

The Court has previously addressed the legal issues raised by claim one of the petition—that when a noncitizen has been paroled into the United States and is subsequently re-detained, due process requires a bond hearing where the government bears the burden of proving that the noncitizen is a flight risk or danger to the community. *See, e.g.*, *R.A.N.O. v. Wofford*, 820 F. Supp. 3d 1094 (E.D. Cal. 2026); *Omer G. G. v. Kaiser*, 815 F. Supp. 3d 1098 (E.D. Cal. 2025); *Ramazan M. v. Andrews*, No. 1:25-CV-01356-KES-SKO (HC), 2025 WL 3145562 (E.D. Cal. Nov. 10, 2025); *Chavarria v. Chestnut*, No. 1:25-CV-01755-DAD-AC, 2025 WL 3533606, at *3 (E.D. Cal. Dec. 9, 2025); *D. L.C. v. Wofford*, No. 1:25-CV-01996-DC-JDP (HC), 2026 WL 25511, at *4 (E.D. Cal. Jan. 5, 2026). The court set a briefing schedule on the petition and ordered respondents to show cause as to whether there are any factual or legal issues in this case that distinguish it from the court's prior orders in *R.A.N.O. v. Wofford*, 820 F. Supp. 3d 1094 (E.D. Cal. 2026), *Omer G.G. v. Kaiser*, 815 F. Supp. 3d 1098 (E.D. Cal. 2025), and *Ramazan M. v. Andrews*, No. 1:25-cv-01356-KES-SKO (HC), 2025 WL 3145562 (E.D. Cal. Nov. 10, 2025), that would justify denying the petition. Doc. 6.

Respondents argue that petitioner is detained under 8 U.S.C. § 1225(b) and cannot be released or receive a bond hearing. Doc. 8 at 1-2. Respondents concede that, "pre-*Padilla*, this case would fit into the category of cases in which the Court has found that petitioner's previous parole into the United States is more significant than the manner of entry resulting in immediate release[.]" *Id.* at 2. But respondents read *Padilla v. United States Immigration and Customs Enforcement*, No. 24-2801, 2026 WL 2822044 (9th Cir. Sept. 21, 2026), for the proposition that noncitizen parolees—including humanitarian parolees like petitioner—are subject to the entry fiction. As *Padilla* explained,

> Where the entry fiction applies, "aliens seeking admission into the United States may *physically* be allowed within its borders pending a determination of admissibility, [but] such aliens are *legally* considered to be detained at the border and hence as never having effected entry into this country."

*Padilla*, No. 24-2801, WL 2822044, at *12. Respondents argue that individuals subject to the entry fiction, such as petitioner, can be "'treated as if stopped at the border' with respect to certain legal rights" and are not entitled to constitutional protections, including the Fifth Amendment right to due process. Doc. 8 at 1-2.

Respondents' invocation of the entry fiction doctrine to divest petitioner of constitutional protections is based upon a misreading of the Ninth Circuit's decision in *Padilla v. United States Immigration and Customs Enforcement*, No. 24-2801, 2026 WL 2822044 (9th Cir. Sept. 21, 2026).

First, *Padilla* is not directly applicable in this context because *Padilla* concerned "a certified class of asylum seekers who entered the United States without being admitted or paroled, were screened for expedited removal, and were found to have a credible fear of persecution or torture." *Id.* at *2 (emphasis added). The *Padilla* plaintiffs' circumstances differ significantly from petitioner's circumstances in this case. Although petitioner in this case is an asylum seeker, he entered the United States as a Haitian humanitarian parolee and did not receive a credible fear determination according to his I-213. Doc. 8-1 at 2-3. *Padilla* held that the class members in that case were not foreclosed from bringing their due process claim; it did not address the question as to parolees like petitioner. 2026 WL 2822044, at *19.

Respondents argue that petitioner is subject to the entry fiction and therefore is not entitled to any Fifth Amendment due process rights. Doc. 8 at 1-2. Respondents point to the discussion in *Padilla* of *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020), arguing that "*Padilla* did not hold that the entry fiction *only applies in an admission case*, not a detention case[.]" Doc. 8, at 2 (discussing *Bravo Morillo v. Chestnut, et al.*, No. 1:26-cv-08080-DC-JDP (HC), 2026 WL 3060542, at *1 (E.D. Cal. Oct. 13, 2026)). But *Padilla* did distinguish admission and detention cases. In discussing the entry fiction, the *Padilla* Court stated:

> Today, the entry fiction encompasses those apprehended at or very near a point of entry and then either paroled into the United States or detained in the United States pending a determination of their admissibility. Such individuals are "treated as if stopped at the border" with respect to certain legal rights. Because such individuals

> remain "on the threshold of initial entry" despite their physical presence in the United States, their *due process rights regarding admission* are limited to "[w]hatever the procedure authorized by Congress is."

*Padilla*, No. 24-2801, 2026 WL 2822044, at *13 (internal citations omitted) (emphasis added). This discussion in *Padilla* addressed the limitation of due process rights in the *admission* context, not in the detention context. *Id.*

*Padilla* went on to distinguish the sources of power over admissibility and detention: "Unlike the political branches' plenary power over admission, the principle that the government cannot arbitrarily detain people, including noncitizens, has been a central tenet of British and American legal traditions since the thirteenth century." *Id.* at *16. *Padilla* emphasized that the entry fiction doctrine does not divest noncitizens of their due process rights regarding detention: "In sum, the government's strictly circumscribed detention authority, a pillar of our common law tradition for almost a millennium, stands in contrast to the political branch's 'plenary authority to decide which [noncitizens] to *admit*.'" *Id.* at *19 (emphasis added) (citing *Thuraissigiam*, 591 U.S. at 139). The entry fiction doctrine therefore "has no application here, the government's fervent pleas for its vast expansion notwithstanding." *Id.*

Courts following *Padilla* have consistently held that petitioners retain due process rights when re-detained, regardless of the entry fiction's effect on a petitioner's admissibility. *See Kleber Vasquez v. Hernandez, et al.*, No. 2:26-cv-02873-TMC, 2026 WL 2936770, at *2 (W.D. Wash. Sept. 30, 2026) ("[W]hile [petitioner's] legal status regarding admission reverted to that of an arriving noncitizen once her parole expired, the Due Process clause continued to require constitutionally adequate procedures surrounding her detention."); *Cuenca-Pucha v. Andrews*, No. 1:26-cv-08113-DC-JDP, 2026 WL 3059492, at *1 (E.D. Cal. Oct. 13, 2026) ( "[C]ontrary to Respondents' expansive interpretation of *Padilla*, that decision limited Petitioner's due process rights relating to his *admissibility* to those prescribed by statute; it had no impact on his due process rights relating to his *detention*. Because Petitioner challenges the lawfulness of his present detention, not his admissibility, *Padilla* does not affect this court's analysis regarding the due process protections necessary to detain Petitioner."). *See also Diaz-Alfonso*, No. 1:26-cv-

07682-DC-CKD, 2026 WL 3060522, at *1 (E.D. Cal. Oct. 13, 2026); *Bravo Morillo v. Chestnut*, No. 1:26-cv-08080-DC-JDP (HC), 2026 WL 3060542, at *1 (E.D. Cal. Oct. 13, 2026). Here, petitioner challenges his detention, not his admissibility. Docs. 1, 4. Therefore, *Padilla* does not foreclose petitioner's due process claim regarding his detention.

Respondents further argue that the entry fiction authorized the indefinite detention of a petitioner in *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1954), and the denial of release of a detained petitioner in *Barrera-Echavarria v. Rison*, 44 F.3d 1441 (9th Cir. 1995) (en banc). But as the Ninth Circuit recognized in *Xi v. United States I.N.S.*, "the problem with the government's argument… is that the statute interpreted in *Barrera-Echavarria* no longer exists." 298 F.3d 832, 837 (9th Cir. 2002). Further, "*Barrera-Echavarria* considered the Attorney General's statutory authority 'to detain undeportable, excludable aliens.' But 'excludable is no longer a term that has any statutory import under the INA.'" *Jose B.M. v. Murray*, No. 1:25-cv-01584-KES-CDB (HC), 2026 WL 19121, at *3 (E.D. Cal. Jan. 4, 2026) (quoting *Barrera-Echavarria*, 44 F.3d at 1444, and *Xi*, 298 F.3d at 838)) (internal citations omitted). *Barrera-Echavarria* does not support respondents' argument that the entry fiction justifies the indefinite detention of petitioner without a bond hearing. *See Xi*, 298 F.3d at 838.[1]

---

[1] The *Mezei* decision recognized that "aliens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law." 345 U.S. at 212. The *Padilla* court cited *Mezei* for the proposition that "individuals remain[ing] 'on the threshold of initial entry' despite their physical presence in the United States" have limited "due process rights regarding *admission*." 2026 WL 2822044, at *13 (citing *Mezei*, 345 U.S. at 212) (emphasis added). Here, there are also substantial factual distinctions differentiating *Mezei* and *Barrera-Echavarria* from petitioner's situation. *Mezei* concerned a petitioner who had not entered the country and who remained at the point of entry, "stranded in his temporary haven on Ellis Island because other countries will not take him back." *Mezei*, 345 U.S. at 207. And *Barrera-Echavarria* concerned a petitioner whose country of origin "consistently refused to readmit him" and who "no third country [would] take" after petitioner was ordered excluded following a criminal conviction and the denial of immigration parole. *Barrera-Echavarria*, 44 F.3d at 1443. By contrast, petitioner in this case lived in the United States for three years before being detained. Doc. 8-1. Petitioner has not been ordered excluded. *Id.* And petitioner's detention did not follow a criminal conviction, nor was he given a bond hearing at which an immigration judge made any determination as to flight risk or danger. Docs. 8-1, 8-4. Rather, the immigration judge in petitioner's case declined to release petitioner on bond because she found the immigration court had no jurisdiction over petitioner's detention. Doc. 8-4 at 1.

The Court finds that petitioner's re-detention without a bond hearing violates due process. In this case, that bond hearing should have been provided before petitioner was detained. "'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest.'" *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542 (1985) (quoting *Boddie v. Connecticut,* 401 U.S. 371, 379 (1971)); *see Zinermon v. Burch*, 494 U.S. 113, 127 (1990) ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty . . . ."). Courts typically require evidence of urgent concerns or an especially strong government interest to justify a post-deprivation hearing. *See Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1035–37 (N.D. Cal. 2025); *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53, 59–61 (1993) ("We tolerate some exceptions to the general rule requiring predeprivation notice and hearing, but only in extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event[,]" such as "executive urgency." (internal quotations omitted)). There are no urgent circumstances in this case. Petitioner has no criminal record and lived freely in the United States without incident for three years before being re-detained. Doc. 8-1.

Accordingly, the petition for writ of habeas corpus is GRANTED. Respondents are ORDERED to release petitioner Patrick Julien (A-Number: 232-597-714) immediately. Respondents are ENJOINED AND RESTRAINED from re-detaining petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that his physical custody is legally justified.[2]

Respondents are ORDERED to provide petitioner with a copy of this Order upon his release.

///

///

[2] This Order does not address the circumstances in which respondents may detain petitioner in the event he becomes subject to an executable final order of removal.

The Clerk of Court is directed to close this case, terminate any pending motions as moot, and enter judgment for petitioner. The Clerk is directed to serve Central Valley Annex with a copy of this Order.

IT IS SO ORDERED.

Dated: November 16, 2026

UNITED STATES DISTRICT JUDGE